UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

STEVEN PAULINO,

Defendant.

**ORDER**

19 Cr. 54 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Defendant Steven Paulino is detained at the Metropolitan Correctional Center ("MCC") and awaits sentencing for a violent Hobbs Act robbery. On March 31, 2019, Paulino moved for release on bail, arguing that he is vulnerable to the COVID-19 virus because he suffers from hypertension. (Mar. 31, 2020 Def. Ltr. (Dkt. No. 45)) The Government opposes Paulino's release on bail.[1] (Apr. 3, 2020 Govt. Ltr. (Dkt. No. 50)) For the reasons stated below, Paulino's motion will be denied.

## BACKGROUND

On November 1, 2018, Paulino robbed a cell phone store located at 2460 Grand Concourse, Bronx, New York. (Cmplt. (Dkt. No. 1) ¶ 5(a)) While robbing the store, Paulino brandished a firearm and sprayed the store manager with mace. (Id. ¶¶ 5(c), 5(e)) Paulino and his two accomplices – who have not been apprehended – made off with three bags of cell phones. (Id. ¶¶ 5(b), 5(e)) The robbery was captured on video surveillance. (Id. ¶ 5(a))

On November 4, 2018, officers of the New York City Police Department ("NYPD") responded to a report of an armed man. (Id. ¶ 8-9) The description of the armed man

---

[1] Paulino has consented to having his bail application decided on the papers, and has waived his right to a hearing. (Dkt. No. 53)

matched Paulino. (Id. ¶ 9) At the scene of the incident, the officers attempted to approach Paulino, but he fled. (Id. ¶¶ 9-10) Officers then heard a gunshot. (Id. ¶ 9)

In fleeing the police officers, Paulino attempted to jump from the roof of one building to the fire escape of another. (Id. ¶ 10) He did not succeed, and fell three stories to the ground. (Id.) NYPD officers arrested Paulino and found on his person a container of mace and two cell phones. (Id. ¶ 11(a)) Police also recovered a loaded .380 caliber semi-automatic handgun about twenty feet away from the spot where Paulino had landed. (Id. ¶ 11(b)) Paulino was arrested and transported to the hospital to be treated for injuries he sustained as a result of his fall. (Id. ¶ 10; PSR (Dkt. No. 38) ¶ 11)

Paulino was arrested on federal charges on November 27, 2018, and was presented before Magistrate Judge Kevin Fox, who released him on bail.[2] (Dkt. No. 5)

On July 19, 2019, Paulino pleaded guilty to conspiracy to commit Hobbs Act robbery and Hobbs Act robbery, in violation of 18 U.S.C. § 1915. (Superseding Information (Dkt. No. 30); July 19, 2019 Plea Tr. (Dkt. No. 33)) The Government agreed to Paulino's continued release on bail. (July 19, 2019 Plea Tr. (Dkt. No. 33) at 25) The Court addressed Paulino as follows:

> Mr. Paulino, I want to say a few things to you before we adjourn.
>
> First of all, you will remain on bail, remain on pretrial release until you're sentenced . . . , so it's vitally important that you remain compliant with all the conditions of your pretrial release between now and the sentencing date.
>
> You should also be aware that it's critically important how you conduct yourself over the next four months, because that will be a part of the record that I will consider in determining what an appropriate sentence is in your case. You are

---

[2] The Government represents that Paulino was released on bail because of the injuries he had sustained in fleeing the police. (Apr. 3, 2020 Govt. Ltr. (Dkt. No. 50) at 1) Paulino does not dispute that assertion.

> facing a lengthy sentence, so you want to put together the best possible record that you can.
>
> What do I mean by that? Well, for a start, that means that you comply with all the terms of your pretrial release.
>
> Secondly, it means that you're being productive in the community, that you have a job or that you're studying or something which demonstrates that you're being productive. All of this will be important, either in demonstrating that you're someone who presents a low risk of recidivism – that is, committing more crimes – or it could argue, depending on how you conduct yourself, that you are a high risk of recidivism and therefore a longer sentence should be imposed.
>
> I wanted to communicate to you as well as to those in the audience that the next four months are extremely important, and they give you an opportunity that many defendants don't have because they're detained. They're in jail, so they can't demonstrate that they can be productive in the community, because they're detained. You're not detained, and so, that gives you an opportunity to demonstrate good behavior over the next four months, and that can be significant, is sometimes significant at sentencing.

(July 19, 2019 Plea Tr. (Dkt. No. 33) at 25-26)

On September 3, 2019, the Pretrial Services Office submitted a violation report concerning Paulino, who had been released on home confinement enforced by electronic monitoring. Paulino had repeatedly violated the conditions of his home confinement. (Sept. 9, 2019 Pretrial Services Mem. at 1-3) He also had allegedly been threatening his ex-girlfriend, who had obtained an order of protection against him. (Id. at 2-3; PSR (Dkt. No. 38) ¶ 61)

The petition for the order of protection described two incidents. (Aug. 27, 2019 Pet.) On August 5, 2019, Paulino entered his ex-girlfriend's home without authorization, became belligerent, and removed property. (Id.) On August 25, 2019, at approximately 9:00 p.m., Paulino – who was subject to an 8:00 p.m. curfew – called his ex-girlfriend and stated, "You better bring my daughter." (Id.; PSR (Dkt. No. 38) ¶ 63) When his ex-girlfriend explained that it was too late, Paulino arrived at her residence and attempted to take their daughter out of a stroller and stated, "I'm taking my fucking baby." (Aug. 27, 2019 Pet.) The mother strapped the

3

child back in the stroller. (Id.) Paulino became belligerent, walked away, and then returned stating, "You lucky I don't kidnap the baby. I can kidnap her, keep playing." (Id.)

On September 9, 2019, the Court conducted a bail review hearing, and ordered that Paulino be remanded. (Sept. 9, 2019 Hearing Tr. (Dkt. No. 36)) In revoking bail, the Court noted that (1) it had warned Paulino about the importance of complying with the conditions of his pretrial release, and he had nonetheless violated those conditions; and (2) Paulino's "significant criminal record" placed him in Criminal History Category IV, which yielded a Guidelines sentencing range of 84 to 105 months' imprisonment. (Id.) The Court concluded that "the legal standard set forth in Section 3143 is not met," and ordered that Paulino be remanded pending sentencing. (Id. at 15)

On March 31, 2020, Paulino moved for release on bail, asserting that the COVID-19 virus presents a special threat to him, because he suffers from hypertension. (Mar. 31, 2020 Def. Ltr. (Dkt. No. 45)) The Government submitted its opposition to Paulino's application on April 3, 2020. (Dkt. No. 50)

## DISCUSSION

### I. LEGAL STANDARD

The Bail Reform Act, 18 U.S.C. § 3143(a)(1), provides that

> the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

18 U.S.C. § 3143(a)(1). This statute "establishes a presumption in favor of detention." United States v. Abuhamra, 389 F.3d 309, 319 (2d Cir. 2004) ("Once guilt of a crime has been

4

established in a court of law, there is no reason to favor release pending imposition of sentence or appeal.") (internal quotation marks omitted).

For violent crimes such as Hobbs Act robbery, Section 3143(a)(2) further restricts the availability of bail. See United States v. Schlesinger, No. CR. 02-485ADSARL, 2005 WL 1657043, at *2 (E.D.N.Y. June 8, 2005) ("Section 3143(a)(2) 'is a more stringent test than the one that applies to individuals who have been convicted of non-violent crimes. . . .'") (quoting United States v. Lea, 360 F.3d 401, 403 (2d Cir. 2004)).

Section 3143(a)(2) provides that a

> judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless –
>
> (A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
>
> (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and
>
> (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

18 U.S.C. § 3143(a)(2). Section 3142(f)(1)(A) references "a crime of violence . . . for which a maximum term of imprisonment of 10 years or more is prescribed." 18 U.S.C. § 3142(f)(1)(A).

Hobbs Act robbery is a "crime of violence," see 18 U.S.C. § 3156(a)(4) (defining "crime of violence" to include offenses that have as an element "the use, attempted use, or threatened use of physical force," or that present "a substantial risk that physical force . . . may be used"); United States v. Hill, 832 F.3d 135, 140 (2d Cir. 2016), as amended 890 F.3d 51 (2d Cir. 2018) ("conspiracy to commit Hobbs Act robbery is a crime of violence under the Bail Reform Act. . . .") (citing United States v. DiSomma, 951 F.2d 494, 496 (2d Cir. 1991)), and the

5

maximum term of imprisonment for Hobbs Act robbery is 20 years.  See 18 U.S.C. § 1951(a).  Because Paulino pled guilty to Hobbs Act robbery and conspiracy to commit Hobbs Act robbery, his bail application is governed by Section 3143(a)(2).

Paulino has not satisfied the requirements of Section 3143(a)(2):  there will be no motion for a judgment of acquittal or a new trial, and the Government has not recommended that no sentence of imprisonment be imposed.  See 18 U.S.C. § 3143(a)(2).

Where, as here, a defendant cannot satisfy the requirements of Section 3143(a)(2), the "only escape hatch . . . is found in 18 U.S.C. § 3145." United States v. Schlesinger, No. CR. 02-485 (ADS) (ARL), 2005 WL 1657043, at *2 (E.D.N.Y. June 8, 2005).  That statute provides that

> [a] person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145(c); see Lea, 360 F.3d at 403 ("[A] defendant convicted of a crime of violence and awaiting sentencing who cannot satisfy the criteria set forth in § 3143(a)(2) may nevertheless be released if (1) the district court finds that the conditions of release set forth in § 3143(a)(1) have been met, and (2) 'it is clearly shown that there are exceptional reasons why [the 'defendant's] detention would not be appropriate.'") (citing 18 U.S.C. § 3145(c)).

"[T]he determination whether a given circumstance presents 'exceptional reasons' under section 3145 requires a 'case-by-case' evaluation by the court, and the court's discretion is 'constrained only by the language of the statute:  'exceptional reasons.'" United States v. Lopez, No. 19 CR 116 (KMW) (JLC), 2020 WL 1678806, at *1 (S.D.N.Y. Apr. 6, 2020) (quoting United States v. DiSomma, 951 F.2d 494, 497 (2d Cir. 1991)).

## II. THE PARTIES' ARGUMENTS

### A. Defendant Paulino

Paulino argues that he should be released on bail because: (1) he does not pose a danger to the community and is not a flight risk; (2) at least four MCC inmates have tested positive for COVID-19 and the measures that the MCC has implemented in response to the outbreak are inadequate; (3) Paulino suffers from hypertension, which puts him at risk of "serious or life-threatening symptoms if he were to contract COVID-19"; (4) the MCC lacks a medical ward and therefore is ill-equipped to treat infected inmates; and (5) Paulino has received mental health treatment in prison, which has transformed his behavior. (Mar. 31, 2020 Def. Ltr. (Dkt. No. 45))

Paulino does not propose a specific bail package, but notes that his original bail conditions included a $50,000 personal recognizance bond co-signed by two financially responsible people, strict pretrial supervision, and home detention. (Id. at 8) If released, Paulino states that he will reside with his mother in the Bronx. (Id.)

### B. The Government

The Government opposes Paulino's application, arguing that: (1) Paulino's detention is mandatory under Section 3143(a)(2) and no exceptional circumstances warrant his release under Section 3145(c); (2) Paulino is 28 years old and, apart from his asserted hypertension, appears to be in good health; (3) the severity of Paulino's hypertension is unclear; (4) the Bureau of Prisons ("BOP") is taking emergency steps to protect inmates from the COVID-19 pandemic, including a mandatory 14-day lockdown of all inmates in the BOP system; and (5) Paulino is a danger to the community and risk of flight because (a) he brandished a firearm during the robbery he committed, and injured the store manager; (b) he faces a

stipulated Guidelines range of 84 to 105 months' imprisonment; and (c) his six prior convictions demonstrate a lack of respect for the law. (Apr. 4, 2020 Govt. Ltr. (Dkt. No. 50))

### III. ANALYSIS

As discussed above, because Paulino pled guilty to Hobbs Act robbery – a crime of violence punishable by a maximum term of imprisonment of more than 10 years – his bail application is governed by Section 3143(a)(2). See 18 U.S.C. § 3143(a)(2) (cross-referencing offenses listed under 18 U.S.C. § 3142(f)(1)(A)); United States v. Verkhoglyad, 516 F.3d 122, 126 n.3 (2d Cir. 2008) ("Having pleaded guilty to a 'crime of violence,' 18 U.S.C. § 3142(f)(1)(A), defendant was subject to mandatory detention pending sentence under . . . § 3143(a)(2).").

And, as is also discussed above, Paulino has not satisfied the requirements of Section 3143(a)(2): there will be no motion for a judgment of acquittal or a new trial, and the Government has not recommended that no sentence of imprisonment be imposed. See 18 U.S.C. § 3143(a)(2).

Accordingly, Paulino's only hope for release is the "escape hatch" found in Section 3145(c), which authorizes bail where a defendant (1) "meets the conditions of release set forth in section 3143(a)(1)," meaning he establishes by clear and convincing evidence that he is not a flight risk or a danger to the community, and (2) "if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."[3]  18 U.S.C. § 3145(c).

---

[3]  Because Paulino has pled guilty, his reliance on Section 3142(i) (see Mar. 31, 2020 Def. Ltr. (Dkt. No. 45) at 6 n.29) is misplaced. See United States v. McDuffie, No. 19-CR-212 (VEC), 2020 WL 1659879, at *1 (S.D.N.Y. Apr. 3, 2020) ("Although defense counsel brings this motion pursuant to 18 U.S.C. § 3142(i), which allows for temporary pre-trial release for a 'compelling reason,' the motion is governed by 18 U.S.C. § 3145(c), which applies when a defendant is awaiting sentencing."); see also United States v. Charles Hartsell, No. 3:19-CR-14(02), 2020 WL

Paulino's application for bail founders on the first requirement: he has not demonstrated by "clear and convincing evidence" that he is not a danger to the community or a risk of flight. Paulino used a firearm to rob a store, and sprayed the store manager with mace. See United States v. Mercedes, 254 F.3d 433, 437 (2d Cir. 2001) ("[C]onspiracy to commit armed robbery . . . weighs heavily against release."). He was arrested three days after the robbery. At that time, police recovered a container of mace on his person, and a loaded .380 caliber semi-automatic handgun twenty feet away from the spot Paulino landed after his fall. (Cmplt. (Dkt. No. 1) ¶¶ 11(a)-(b)) Paulino also has five prior convictions, including for robbery and assault (PSR (Dkt. No. 38) ¶¶ 46-54) see United States v. Steward, No. S1:20CR0052 (DLC), 2020 WL 1468005, at *1 (S.D.N.Y. Mar. 26, 2020) (citing defendant's "lengthy criminal record" as a factor favoring detention), and he committed the instant offenses while on probation. (PSR (Dkt. No. 38) ¶ 59)

As to risk of flight, Paulino has had a bench warrant issued in the past (see id. ¶ 49), and fled when approached by officers in connection with the instant case. Indeed, he went so far as to jump from a building's rooftop to an adjoining building's fire escape. (Id. ¶ 11) And in 2010, in connection with an assault charge, Paulino refused to comply with police officers' commands to stop and led officers on a chase through multiple backyards. (Id. ¶ 48)

---

1482175, at *1 (N.D. Ind. Mar. 25, 2020) ("18 U.S.C. § 3142 applies to the release or detention of a defendant pending trial, but [defendant] is pending sentencing. . . . 18 U.S.C. § 3143(a) applies to the release or detention of a defendant pending sentencing, and that statute has no corresponding cousin to 18 U.S.C. § 3142(i) that would authorize temporary release for a compelling reason."); United States v. Bolze, No. 3:09-CR-93, 2010 WL 199978, at *2 (E.D. Tenn. Jan. 13, 2010) ("[T]he Court questions the applicability of [18 U.S.C. § 3142(i)] to the instant inquiry because the Defendant is no longer in 'pretrial' detention, rather he is detained post plea, pending sentencing. Section 3143(a), which governs release or detention pending sentencing, contains no language providing for temporary release.").

Here, Paulino faces a stipulated Guidelines range of 84 to 105 months' imprisonment, a potential sentence that provides an obvious incentive to flee. See United States v. Scali, No. 7:16-CR-466-(NSR), 2018 WL 3410015, at *2 (S.D.N.Y. July 12, 2018), aff'd, 738 F. App'x 32 (2d Cir. 2018) ("Defendant's conviction of crimes with an overall guidelines range of 87-108 months is a factor that increases his risk of flight. Defendant faces the prospect of a long imprisonment that very likely may make him reluctant to willingly submit to incarceration.") (citing United States v. Londono-Villa, 898 F.2d at 329-30 (2d Cir. 1990)).

Finally, the Defendant has shown in past cases and in connection with the instant case that he is not susceptible to community supervision. As noted above, in committing the instant crime, the Defendant violated his probation. And even though the Court warned the Defendant about the importance of complying with the terms of his pretrial release (July 19, 2019 Plea Tr. (Dkt. No. 33) at 25-26), he was not able to remain compliant. See Sept. 9, 2019 Hearing Tr. (Dkt. No. 36) at 2; Sept. 3, 2019 Pretrial Services Mem. at 1-3)

Given these circumstances, the Court cannot find by "clear and convincing evidence" that Paulino does not pose a risk of flight or a danger to the community. "'As serious as it is, the outbreak of COVID-19 simply does not override the statutory detention provisions [of the Bail Reform Act]. In the absence of evidence demonstrating a change in circumstances concerning [Paulino's] status as a flight risk and danger to another person or the community, detention pending sentence must be maintained.'" United States v. Deonte Cooper, No. 1:18-CR-126 EAW, 2020 WL 1577852, at *3 (W.D.N.Y. Mar. 30, 2020) (quoting United States v. Rollins, 19-CR-34S, 11-CR-251S (WMS), 2020 WL 1482323, at *2 (W.D.N.Y. Mar. 27, 2020)).

10

## CONCLUSION

Defendant Paulino has not met his burden of establishing by "clear and convincing evidence" that he is not likely to flee or pose a danger to the safety of any other person or the community if released on bail. Accordingly, his application for release on bail (Dkt. No. 45) is denied.

Dated: New York, New York
April 13, 2020

SO ORDERED.

Paul G. Gardephe
United States District Judge

11